KNEUPPER & COVEY, PC
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Attorney for Plaintiff Martin Waters*

## UNITED STATES DISCTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN WATERS,<br><br>                    Plaintiff,<br><br>vs.<br><br>VROOM INC., and VROOM AUTOMOTIVE, LLC,<br><br>                    Defendants. | Case No. **'22CV1191 TWR AGS**<br><br>**COMPLAINT FOR:**<br><br>(1) Fraudulent Inducement<br>(2) Breach of Contract<br>(3) Breach of Express Warranty<br>(4) Breach of Warranty Title<br>(5) Breach of Implied Warranty of Merchantability<br>(6) Breach of Implied Warranty of Fitness for a Particular Purpose<br>(7) Violation of the Magnuson-Moss Warranty Act<br>(8) Violation of the Texas Deceptive Trade Practices-Consumer Protection Act<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Martin Waters, by and through the undersigned counsel, hereby files this Complaint against Defendants Vroom, Inc. and Vroom Automotive, LLC (collectively "Defendants" or "Vroom"):

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Mr. Waters and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00. It further has subject matter jurisdiction because Mr. Waters pleads a claim under federal law under the Magnuson-Moss Warranty Act.

2.     This Court has personal jurisdiction over Vroom Inc. because it regularly conducts business in California, including this District. Vroom Inc. marketed, promoted, distributed, and sold its vehicles in California, including to Mr. Waters, and Vroom Inc. has sufficient minimum contacts with this District and/or sufficiently availed itself of the markets in this District through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible. Vroom, Inc. sells its cars through an interactive website, Vroom.com, which collects information about customers and which targets consumers in California including Mr. Waters. Vroom, Inc. further operates a Los Angeles-based hub which was specifically designed to increase purchases of the cars by California customers, which the company targets on its website by publicizing this California-specific service.[1] Vroom, Inc. was further involved in the transaction with Mr. Waters and listed itself as the point of contact in the arbitration clause of the agreement with him.

3.     This Court has personal jurisdiction over Vroom Automotive, LLC because it regularly conducts business in California, including this District. Vroom Automotive, LLC marketed, promoted, distributed, and sold its vehicles in

---

[1] *Online Automotive Retailer Vroom Offers Last Mile Concierge Experience to Los Angeles Locals*, VROOM (May 5, 2021), https://ir.vroom.com/news-releases/news-release-details/online-automotive-retailer-vroom-offers-last-mile-concierge-1/.

California, including to Mr. Waters, and Vroom Automotive, LLC has sufficient minimum contacts with this District and/or sufficiently availed itself of the markets in this District through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible. Employees of Vroom Automotive, LLC repeatedly communicated with Mr. Waters in the State of California and attempted to get him to perform inspections of the vehicle in this state and to register the vehicle in this state. Vroom Automotive, LLC sells its cars through an interactive website, Vroom.com, which collects information about customers and which targets consumers in California including Mr. Waters. Vroom Automotive, LLC further operates a Los Angeles-based hub which was specifically designed to increase purchases of the cars by California customers, which the company targets on its website by publicizing this California-specific service.

4.     Venue is proper in this District under 28 U.S.C. § 1391(a) and (b) because a substantial part of the events giving rise to Mr. Water's claim occurred while he resided in this judicial district, including the purchase of the subject vehicle.

## THE PARTIES

5.     Plaintiff Martin Waters is a citizen of the State of California and resides in Rancho Santa Fe, California.

6.     Defendant Vroom, Inc. is a Delaware corporation, and its registered agent is Corporation Service Company, which may be served at 251 Little Falls Drive, Wilmington, Delaware 19808.

7.     Defendant Vroom Automotive, LLC is a Texas limited liability company that is registered to do business in California, and its registered agent is Corporation Service Company, which may be served at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

## **BACKGROUND AND NATURE OF THE ACTION**

8.     This is a civil action for fraudulent inducement, breach of contract, breach of express warranty, breach of warranty of title, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss"), and violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), which arises out of Vroom's failure to title and register the vehicle that was purchased by Mr. Waters in a timely manner.

9.     Mr. Waters has suffered greatly as a result of Vroom's actions, and Vroom has caused Mr. Waters considerable injury and anguish due to its actions.

10.     Vroom is a used motor vehicle retailer that allows its customers to buy, sell, and finance a vehicle online throughout the United States, including California.[2]

11.     Vroom describes itself as "an innovative, end-to-end ecommerce platform that is transforming the used vehicle industry by offering a better way to buy and a better way to sell used vehicles," and as a business that is "deeply committed to creating an exceptional experience for [its] customers."[3]

12.     However, Vroom has consistently failed to live up to these aspirations to the detriment of consumers throughout the United States. These failures are evidenced by widespread reports of problems from consumers and consistent findings that Vroom has engaged in unlawful actions by the Texas Department of Motor Vehicles ("Texas DMV") and the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV").

13.     Despite its knowledge that there have been widespread complaints of problems from consumers, Vroom has failed to alter its business practices to address these concerns or change its advertising to align with the experiences that its customers are actually having with Vroom.

---

[2] *See* VROOM, https://www.vroom.com (last visited June 14, 2022).
[3] *Form 10-K, Vroom, Inc.*, SEC (Feb. 28, 2022), https://ir.vroom.com/static-files/001082c3-fde3-4103-9931-f19c0f13569a.

14. Vroom continues to advertise that it will title and register the vehicles that it sells its customers in a timely manner in the states in which they reside. Specifically, Vroom advertises that (1) it will title and register the vehicles that are purchased by its customers in the state of their purchasers; (2) its vehicles will come with temporary tags that will allow them to be driven until the titling and registration process is complete; and (3) the titling and registration process will be complete within six to eight weeks of purchase.[4]

15. Vroom knows that these representations are far from the truth and are false and deceptive insofar as its customers are frequently forced to wait months to receive the necessary titling and registration documents, yet Vroom continues to make such representations to the public. Vroom has specifically acknowledged this problem in the Form 10-Ks that it files annually with the Securities and Exchange Commission,[5] and Vroom has been repeatedly put on notice of these problems by the Texas DMV, the FLHSMV, the Texas Attorney General's Office, the Better Business Bureau ("BBB"), and local news reporting.

16. The Texas DMV has taken administrative action against Vroom on numerous occasions for offenses relating to its handling of vehicle titles. [6] These offenses include the sale of vehicles without their titles and substantial delays

---

[4] *See, e.g.*, *Why Does My Deal Package Include a Texas Title Application if I Don't Live in Texas*, VROOM, https://www.vroom.com/marketing/contact?articleId=ka02G000000Dk5eQAC (last visited June 14, 2022); *Will My Vehicle Come with My Titling and Registration Documents?*, VROOM, https://www.vroom.com/marketing/contact?articleId=ka02G000000LgjDQAS (last visited June 14, 2022).

[5] *See, e.g.*, *Form 10-K, Vroom, Inc.*, SEC (Mar. 3, 2021), https://ir.vroom.com/static-files/d1124ff6-0f2e-45f7-9cbb-c4bcd71a512f ("We also have experienced disruptions in our logistics network and productivity challenges in our back-office operations, including backlogs in the titling and registration of vehicles . . . ."); *Form 10-K, Vroom, Inc.*, SEC (Feb. 28, 2022), https://ir.vroom.com/static-files/001082c3-fde3-4103-9931-f19c0f13569a ("Backlogs in our business developed as there was more sales volume than we had the capacity to manage, resulting in delays in processing transactions, including delays in titling and registering vehicles purchased by our customers, which have adversely affected our customer experience and have led to increased calls to our customer service teams, who have had difficulty keeping up with the increased call volume . . . .").

[6] *Case History For:* P109181, TEX. DEP'T OF MOTOR VEHICLES, https://txdmv.force.com/dealers/motorvehicledealerliststaging (last visited Feb. 22, 2022).

in the provision of title documents to customers. The Texas DMV has taken these actions against Vroom over the course of several years, and the Texas DMV recently entered into an agreement under which Vroom agreed to pay $296,000.00 in civil penalties related to its unlawful actions in relation to the sale of vehicles to more than a hundred consumers throughout the United States.[7]

17.     The Texas Attorney General's Office recently filed a lawsuit against Vroom as a result of the deceptive trade practices that it uses in relation to the sale of vehicles to consumers throughout the United States.[8] Specifically, the lawsuit alleged that "Vroom ha[d] misrepresented and failed to disclose significant delays in transferring clear title and obtaining vehicle registrations, [which] burden[ed] thousands of consumers," and that Vroom "ha[d] misrepresented and failed to disclose vehicle history and condition and terms of financing and approval."[9]

18.     The FLHSMV has similarly taken administrative action against Vroom. Specifically, the FLHSMV has filed two complaints against Vroom in relation to the same titling problems that prompted the Texas Attorney General's Office to file a lawsuit against Vroom.[10] Vroom had fines imposed against it by the FLHSMV in both of these cases in the amounts of $47,000.00 and $87,000.00.

---

[7] *Id.*

[8] Complaint, *State of Texas v. Vroom Automotive LLC and Vroom Inc.*, No.D-1-GN-22-001809 (Travis       Cnty.       Dist.       Ct.       Apr.       19,       2022), https://www.texasattorneygeneral.gov/sites/default/files/files/branding/files/01_Vroom%20POP%204.19.22.pdf.

[9] *AG Paxton Files Lawsuit Against Vroom Due to Deceptive Trade Practices*, ATT'Y GEN. OF TEXAS (Apr. 20, 2022), https://www.texasattorneygeneral.gov/news/releases/ag-paxton-files-lawsuit-against-vroom-due-deceptive-trade-practices; *see also, e.g.*, Mark Huffman, *Texas Sues Vroom in Response to Consumer Complaints*, CONSUMER AFFS. (Apr. 26, 2022), https://www.consumeraffairs.com/news/texas-sues-vroom-in-response-to-consumer-complaints-042622.html; CBS DFW Staff, *Texas Files Suit Against Online Car Dealer Vroom for Deceptive Practices*, KWTX (Apr. 20, 2022 7:39 PM), https://www.kwtx.com/2022/04/20/texas-files-suit-against-online-car-dealer-vroom-deceptive-practices/; Caresse Jackson, *Texas AG's Office Files Lawsuit Against Vroom*, WSMV4 (Apr. 21, 2022, 7:09 PM), https://www.wsmv.com/2022/04/21/texas-ags-office-files-lawsuit-against-vroom/.

[10] *See, e.g.*, Shannon Behnken, *Florida Files 47-Count Complaint Against Car Dealer Vroom Over Title Issues*, NEWS CHANNEL 8 (Jan. 19, 2022 5:03 AM), https://www.wfla.com/8-on-your-side/better-call-behnken/florida-files-47-count-complaint-against-car-dealer-vroom-over-title-issues/; Shannon Behnken, *Florida Files 87-Count Complaint Against Vroom Over Title Delays*,

19.     The BBB operates a complaint database and provides businesses an opportunity to respond to consumer complaints that are filed through its website. This database has long documented the negative experiences of Vroom's customers, particularly as it relates to its failure to title and register the vehicles t in a timely manner. The BBB has been inundated with consumer complaints regarding Vroom, and more than 5,800 consumer complaints have been filed against Vroom through the BBB's website. The sheer number of consumer complaints prompted the BBB to issue a consumer alert regarding the pattern of complaints that it had received, and one of the areas of concern that was specifically highlighted by the BBB was Vroom's problems relating to the titling and registration of vehicles.

20.     Local news agencies across the United States have also highlighted the problems that consumers within their states have had with Vroom relating to the titling and registration of their vehicles.[11]

21.     As such, it is clear that thousands of consumers have unnecessarily suffered as a result of the rampant unlawful and wrongful behavior by Vroom in relation to the titling and registration process for its vehicles, and Mr. Waters is merely one of Vroom's many victims.

---

NEWS CHANNEL 8 (June 23, 2022, 3:20 PM), https://www.wfla.com/8-on-your-side/better-call-behnken/florida-files-87-count-complaint-against-vroom-over-title-delays/.

[11] *See, e.g.*, Amy Davis & Andrea Slaydon, *KPRC 2 Investigates Online Car Buying Nightmares*, KPRC 2 (Sept. 16, 2021, 7:00 AM), https://www.click2houston.com/news/local/2021/09/13/kprc-2-investigates-online-car-buying-nightmares/ (Texas); Suzan Tompor, *Customers Never Want to Deal with Online Car Seller Vroom Again*, DETROIT FREE PRESS (Aug. 19, 2021, 5:06 PM), https://www.freep.com/story/money/personal-finance/susan-tompor/2021/08/17/vroom-buy-car-online-customer-service-fees/5458495001/?gnt-cfr=1 (Michigan); Jeremy Harris, *State Regulators Warn Buyers After Complaints About Online Car Seller Vroom*, KJZZ.COM (Dec. 7, 2021), https://kjzz.com/news/state-regulators-warn-buyers-after-complaints-about-online-car-seller-vroom (Utah); Ben Simmoneau, *Online Car Buying Bumpy Road for Some Massachusetts Vroom Customers*, WCVB5 (July 20, 2021 7:00 PM), https://www.wcvb.com/article/online-car-buying-bumpy-road-for-some-massachusetts-vroom-customers/37082622# (Massachusetts); Caresse Jackson, *Vroom Customers Claim They've Waited Months for Car Titles and Information*, NEWS4 NASHVILLE (Dec. 3, 2021), https://www.wsmv.com/call_4_action/vroom-customers-claim-they-ve-waited-months-for-car-titles-and-information/article_d55d79d6-5494-11ec-aa5e-6bd568823ce7.html (Tennessee).

## **FACTUAL ALLEGATIONS**

22.     Mr. Waters is a California consumer who entered into a contract with Vroom for the purchase of a vehicle on June 6, 2020. A true and accurate copy of the contract that Mr. Waters received from Vroom is attached as Exhibit 1.

23.     The vehicle that Mr. Waters purchased from Vroom was a used 2017 Mazda CX-5 (VIN JM3KFBBL9H0143106).

24.     The final sales price of the vehicle was $22,657.96. As part of this price, Mr. Waters was required to pay Vroom $371.00 in fees related to the titling and registration of the vehicle.

25.     Despite the fact that Mr. Waters paid hundreds of dollars in fees related to the titling and registration of the vehicle, Vroom failed to title and register the vehicle in his name for more than two years.

26.     Mr. Waters first contacted Vroom regarding his purchase of a vehicle for his daughter in late May 2020 or early June 2020.

27.     Mr. Waters was interested in purchasing a vehicle for his daughter who was a student at The Ohio State University, and Mr. Waters told Vroom that the vehicle would need to be delivered to his daughter in Columbus, Ohio.

28.     However, Mr. Waters made clear to Vroom that he and his daughter were both residents of California, and that the vehicle would need to be titled and registered in his name in California even if the vehicle was delivered to his daughter in Columbus, Ohio.

29.     Vroom expressly represented to Mr. Waters that it would be able to title and register the vehicle in his name in California even if the vehicle was not physically present in California until his daughter was set to graduate from The Ohio State University a couple of years later.

30.     Vroom never raised any concerns with this arrangement or flagged that this arrangement would cause problems for Mr. Waters or his daughter down the road, and Mr. Waters relied extensively on Vroom's express representations that it

would be able to title and register the vehicle in his name in California even if the vehicle was physically in Columbus, Ohio. Indeed, Mr. Waters would not have purchased the vehicle from Vroom had he known that it would not be able to title and register the vehicle in his name in California in a timely manner, and Mr. Waters decided to purchase the vehicle from Vroom only after being reassured that the transaction could be completed as he desired.

31.     Vroom delivered the vehicle to Mr. Waters' daughter at her residence in Columbus, Ohio, in June 2020, and the vehicle was equipped with a sixty-day Texas temporary tag that was set to expire in August 2020.

32.     Mr. Waters promptly began to work with Vroom in an attempt to get it to title and register the vehicle in his name in California, but Mr. Waters ran into several roadblocks insofar as Vroom was asking him to take certain actions that were purportedly needed for it to title and register the vehicle in his name in California that were not possible insofar as the vehicle was not located there.

33.     Specifically, Vroom repeatedly insisted that Mr. Waters would need to have a smog inspection and a VIN verification performed on the vehicle in California despite the fact that the vehicle was physically located in Columbus, Ohio, and would remain there for a couple of years.

34.     Mr. Waters repeatedly told the Vroom representatives with whom he spoke that he could not have a smog inspection and a VIN verification performed on the vehicle in California because the vehicle was physically located in Columbus, Ohio, and would remain there for a couple of years.

35.     Vroom failed to substantively respond to the concerns of Mr. Waters or look into any solutions to this problem that would allow for the vehicle to be titled and registered in his name in California. Rather, Vroom simply ignored the problem and left Mr. Waters and his daughter without the use of the vehicle once the first temporary tag expired in August 2021.

36.     Mr. Waters repeatedly contacted Vroom regarding his need for a second temporary tag for the vehicle around the time that the first temporary tag was set to expire, and Mr. Waters took all the actions that Vroom asked of him such that his request for a second temporary tag could be processed. Nonetheless, Vroom failed to provide Mr. Waters with a second temporary tag for the vehicle prior to the expiration of the first temporary tag.

37.     Mr. Waters continued to contact Vroom regarding his need for a second temporary tag after the first temporary tag on the vehicle had expired, and he similarly had no luck in getting Vroom to process his request for a second temporary tag despite the fact that he had done everything that Vroom had asked of him such that it could process this request.

38.     Vroom failed to provide Mr. Waters with a second temporary tag until January 21, 2021, and this temporary tag was shipped to Mr. Waters's daughter in Columbus, Ohio. Mr. Waters and his daughter were denied of the use of the vehicle from August 2020 to January 2021 due to Vroom's failure to provide them a second temporary tag in a timely manner.

39.     Mr. Waters attempted to get a third temporary tag for the vehicle when the second temporary tag for the vehicle was nearing its expiration, and Mr. Waters faced similar problems getting Vroom to provide him with a third temporary tag for the vehicle. As such, Mr. Waters and his daughter were again unable to use the vehicle when the second temporary tag on the vehicle expired in February 2021, and they continued to be unable to use the vehicle until they were finally provided with a third temporary tag around a year later.

40.     Mr. Waters continued to have substantial problems with Vroom insofar as Vroom was continuing to fail to take any actions to resolve the problems that were preventing it from titling and registering the vehicle in his name in California.

41.     Beginning in March 2021, Mr. Waters began to receive a series of emails from a parade of Vroom employees regarding the actions that he needed to take such that Vroom could title and register the vehicle in his name in California.

42.     The emails demanded that Mr. Waters get a smog inspection and a VIN verification for the vehicle in California despite the fact that he had been explaining to Vroom that this was not possible due to the physical location of the vehicle for nearly a year.

43.     Mr. Waters explained this information to each Vroom employee with whom he spoke, yet each employee failed to take any action to attempt to resolve his problems, and Mr. Waters continued to receive these form emails every couple of weeks from March 2021 to June 2021.

44.     Mr. Waters was finally contacted by Ms. Jasmine Bartlett—a more senior Vroom employee—regarding the problems that Vroom was having with the titling and registration of the vehicle in his name in California.

45.     Ms. Bartlett told Mr. Waters that the VIN verification could be performed by a police officer in Ohio on the form that was required by the California Department of Motor Vehicles, and that this would allow Vroom to title and register the vehicle in his name in California.

46.     Mr. Waters and his daughter promptly attempted to have the VIN verification performed by a police officer in Ohio. However, Mr. Waters and his daughter were repeatedly informed that police officers in Ohio would not complete the VIN verification on the form that was required by the California Department of Motor Vehicles. Rather, the police officers in Ohio would only complete a VIN verification on the analogous form that is required by the Ohio Bureau of Motor Vehicles.

47.     Mr. Waters promptly informed Ms. Bartlett of his unsuccessful attempts to have a police officer in Ohio perform the VIN inspection on the form that was required by the California Department of Motor Vehicles. However,

Ms. Bartlett failed to take any further action to attempt to resolve Mr. Waters' titling and registration problems, and Mr. Waters and his daughter continued to be unable to use the vehicle due to its lack of a valid temporary tag or license plate.

48.     The City of Columbus impounded the vehicle on January 10, 2022, due to the fact that that the vehicle did not have a valid temporary tag or license plate and was unregistered.

49.     Mr. Waters promptly contacted Ms. Bartlett regarding the fact that the vehicle had now been impounded due to Vroom's failure to title and register the vehicle in his name in California. Ms. Bartlett failed to provide Mr. Waters any substantive response to his request for assistance. Rather, Ms. Bartlett merely instructed Mr. Waters that he should have the VIN verification completed by a police officer in Ohio on the form that was required by the California Department of Motor Vehicles. This instruction ignored the fact that Mr. Waters and his daughter had attempted to do this six months earlier and had informed Ms. Bartlett that this was not a possibility.

50.     Because the vehicle had been impounded, there was a substantial risk that the vehicle would be sold at auction in the event that Mr. Waters and his daughter could not resolve their issues with Vroom in a prompt manner.

51.     Mr. Waters consulted with an expert on matters involving the California Department of Motor Vehicles regarding his dilemma, and Mr. Waters received some advice from the expert regarding what actions he could take to allow the vehicle to be titled and registered in his name in California.

52.     Mr. Waters completed two forms that the expert recommended and sent these forms to Ms. Bartlett so that Vroom could submit them to the California Department of Motor Vehicles, though it is not clear if Ms. Bartlett ever submitted these documents to as directed. Mr. Waters also requested additional documentation from Vroom that would show that he is the true owner of the vehicle. Mr. Waters

needed this documentation to assist him in getting his vehicle released from the impound lot that was operated by the City of Columbus.

53.     Mr. Waters went back in forth with the City of Columbus regarding the release of the vehicle from the impound lot for a couple of weeks, and Mr. Waters was forced to hire an attorney to assist him in getting the vehicle released from the impound lot prior to it being sold at auction.

54.     Mr. Waters was ultimately able to get the vehicle released from the impound lot that was operated by the City of Columbus in early February 2021 after paying $1,150.00 for the cost of the tickets and impound fees.

55.     Mr. Waters was able to work with Vroom to get a sixty-day California temporary tag for the vehicle after the vehicle was released from the impound lot, and this temporary tag was set to expire on April 1, 2022. Vroom failed to title and register the vehicle in Mr. Waters' name in California or address the problems that he was having prior to the expiration of the temporary tag. As such, Mr. Waters and his daughter were again denied the use of the vehicle when the third temporary tag expired on April 1, 2022. Mr. Waters rightfully had no faith that Vroom would be able to resolve his problems prior to the expiration of the third temporary tag insofar as Vroom continued to contact Mr. Waters to request that he take actions that are not possible to resolve his problems.

56.     On March 15, 2022, Vroom called Mr. Waters to ask him to have a smog inspection performed on the vehicle in California. Vroom chose to act in this manner despite the fact that it received a letter from Mr. Waters through counsel regarding the problems that he was having with Vroom more than a month prior and his inability to have such a smog inspection performed in California due to the vehicle's physical location in Columbus, Ohio. Vroom continued to take no action to attempt to resolve Mr. Waters's problems, and his temporary tag expired prior to the receipt of a new one or the vehicle being titled and registered in his name in California.

57.     In late May 2022, Mr. Waters made the decision to ship the vehicle from Ohio to California so that he could get a smog certification and VIN verification performed on the vehicle in an attempt to end this debacle. Mr. Waters was forced to spend around $1,700.00 to ship the vehicle to California from Ohio, and he submitted the documentation that Vroom had been requesting shortly thereafter in mid-June 2022.

58.     Mr. Waters eventually received the registration and a permanent license plate for the vehicle on June 20, 2022. This was more than two years after he had purchased the vehicle from Vroom. Even though Mr. Waters had now received the registration and a permanent license plate for the vehicle, he still faced the momentous task of getting the vehicle back to Ohio, which he estimates will cost an additional $1,500.00 to $2,000.00 based on what it took to ship the vehicle from Ohio to California.

59.     Mr. Waters has been entirely blameless throughout this process, and the failures of Vroom are the sole cause of its inability to title and register the vehicle in his name in California for more than two years. Mr. Waters notified Vroom about his intention to title and register the vehicle in California despite it being physically located in Columbus, Ohio, prior to completing the purchase, and Mr. Waters was forced to spend countless hours attempting to resolve his problems with Vroom, the California Department of Motor Vehicles, and the Ohio Bureau of Motor Vehicles.

60.     Vroom could have solved the problems that Mr. Waters was having on several occasions but consciously chose not to take these actions. First, Vroom could have coordinated and paid for the vehicle to be transported to California for the smog inspection and VIN verification and then back to Mr. Waters' daughter in Columbus, Ohio. Second, Vroom could have paid a smog abatement fee of $20.00 to avoid California's smog inspection requirement insofar as the vehicle was less than four

years old at the time that it was purchased.[12] Third, Vroom could have taken charge of the problem by personally contacting the California Department of Motor Vehicles and the Ohio Bureau of Motor Vehicles regarding the VIN verification issue and attempting to resolve the issue between the two states. Vroom instead chose to dump the problem on Mr. Waters and ignore it.

61.   Mr. Waters has suffered substantial damage as a result of Vroom's failure to title and register the vehicle in his name in California in a timely manner. Mr. Waters and his daughter were unable to use the vehicle from August 2020 to January 2021, February 2021 to February 2022, and from April 2022 to June 2022. Mr. Waters purchased the vehicle outright from Vroom and spent thousands of dollars on insurance for the vehicle despite the fact that it took Vroom more than two years to title and register the vehicle in his name in California. Mr. Waters was forced to pay $1,150.00 to have the vehicle released from impound, and he was forced to hire an attorney to assist him with this at a cost of $1,100.00. Mr. Waters also spent nearly $1,700.00 to ship the vehicle from Ohio to California and faces similar expenses to ship the vehicle back to Ohio from California.

62.   Vroom has caused substantial delay in this matter by failing to arbitrate this dispute in accordance with the American Arbitration Association's *Consumer Arbitration Rules*, which are incorporated by reference into his purchase agreement for the vehicle.

63.   Mr. Waters's purchase agreement for the vehicle includes an arbitration clause, which provides (in part) that all disputes must be addressed in arbitration. As a result, Mr. Waters filed an arbitration demand with the American Arbitration Association ("AAA") (Case No. 01-22-0001-1807) on March 18, 2022.

64.   This arbitration demand included all the claims that arose out of Vroom's failure to title and register the vehicle in his name, and Mr. Waters paid the

---

[12] *See, e.g.*, CAL. HEALTH & SAFETY CODE §§ 44011(a)(3), 44060(d)(1); *Registration Fees*, CAL. DEP'T OF MOTOR VEHICLES, https://www.dmv.ca.gov/portal/vehicle-registration/registration-fees/ (last visited Marc. 15, 2022).

$200.00 filing fee that was required of him and complied with all other requirements of the arbitration provision and the AAA's *Consumer Arbitration Rules*.

65.     On April 6, 2022, the AAA initiated the arbitration and invoiced Vroom $300.00 for the Initial Administrative Fee that was required for the business to initiate the arbitration. Vroom was advised in writing that Cal. Civ. Proc. Code § 1281.97 and 1281.98 applied to this action, that the matter would be closed if payment was not received by May 6, 2022, and that the AAA could not grant any extensions to this payment deadline.

66.     On May 2, 2022, the AAA sent Vroom a letter and advised Vroom that it had yet to make the required payment for the Initial Administrative Fee, and that Vroom would administratively close the case pursuant to Cal. Civ. Proc. Code § 1281.97 and 1291.98 if payment was not received by this deadline.

67.     On May 18, 2022, an arbitrator was appointed in this matter, and Vroom was invoiced $1,400.00 for a Case Management Fee and $2,500.00 for the arbitrator compensation deposit. Vroom was again advised in writing that Cal. Civ. Proc. Code § 1281.98 applied to this action, that the matter would be closed if payment was not received by June 17, 2022, and that the AAA could not grant any extensions to this payment deadline.

68.     On June 6, 2022, the AAA sent Vroom a letter and advised Vroom that it had yet to make the required payment for the Case Management Fee and the arbitrator compensation deposit, and that Vroom would administratively close the case pursuant to Cal. Civ. Proc. Code 1291.98 if payment was not received by this deadline.

69.     On June 22, 2022, the AAA sent Vroom a letter that confirmed that the AAA had not received payment for the arbitrator compensation deposit, and the AAA advised Mr. Waters that he should advise the AAA of how he wished to proceed under Cal. Civ. Proc. Code § 1281.98.

70.     On June 23, 2022, Mr. Waters advised the AAA that he intended to withdraw this claim from arbitration and proceed in a court of appropriate jurisdiction pursuant to Cal. Civ. Proc. Code § 1281.98, and this matter was administratively closed by the AAA on June 28, 2022.

71.     Mr. Water's contract with Vroom provides that Texas law applies to this dispute.

72.     At least sixty days prior to seeking damages under the Texas Deceptive Trade Practices Act, Mr. Waters sent Vroom a written demand for relief pursuant to Texas Business & Commerce Code Section 17.505 that advised it in reasonable detail of his specific complaint and the amount of his economic damages, his damages for mental anguish, and his expenses, including reasonable attorneys' fees, that were incurred in asserting his claims against it.

## FIRST CAUSE OF ACTION

### Fraudulent Inducement

### (As to All Defendants)

73.     Mr. Waters realleges and incorporates herein by reference each and every paragraph set forth above.

74.     Vroom expressly represented to Mr. Waters that it would be able to title and register the vehicle in his name in California even if the vehicle was not physically present in California until his daughter was set to graduate from The Ohio State University a couple of years later. This representation was false insofar as Vroom was unable to title and register the vehicle in Mr. Waters' name in California for more than two years due to problems purportedly related to the vehicle's presence in Columbus, Ohio.

75.     Vroom made this misrepresentation to Mr. Waters with knowledge that it would be unable to title and register the vehicle in his name in California without the vehicle being physically present there or without knowledge as to whether it would be able to take these actions on his behalf.

76.     Vroom made this misrepresentation to Mr. Waters with the intent that he should rely on or act upon the misrepresentation by purchasing a vehicle from Vroom for his daughter.

77.     Mr. Waters relied on this misrepresentation in making the decision to purchase a vehicle from Vroom for his daughter, and Mr. Waters would not have purchased a vehicle from Vroom had he known that it would be unable to title and register the vehicle in his name in California without the vehicle being physically present there.

78.     Mr. Waters' reliance on this misrepresentation has caused him substantial damage insofar as he and his daughter were denied the use of the vehicle for more than a year and a half as a result and were forced to incur thousands of dollars in unnecessary expenses as part of the resolution of this matter.

## SECOND CAUSE OF ACTION

### Breach of Contract (Retail Purchase Agreement)

### (As to All Defendants)

79.     Mr. Waters realleges and incorporates herein by reference each and every paragraph set forth above.

80.     Mr. Waters and Vroom entered into a contract under the terms of which Vroom sold him the used 2017 Mazda CX-5.

81.     Under the terms of the contract, Vroom was obligated to title and register the vehicle in Mr. Waters' name in California in a timely manner.

82.     Vroom failed to title and register the vehicle in Mr. Waters' name for more than two years.

83.     By failing to title and register the vehicle in Mr. Waters' name in California in a timely manner, Vroom breached the contract.

84.     Mr. Waters has suffered substantial damage as a result of Vroom's breach of contract. Specifically, Mr. Waters and his daughter were denied the use of the vehicle for more than a year and a half.

85.    As such, Mr. Waters is entitled to recover his attorneys' fees, as well as any other damages that are recoverable.[13]

### THIRD CAUSE OF ACTION

**Breach of Contract (Arbitration Agreement)**

**(As to All Defendants)**

86.    Mr. Waters realleges and incorporates herein by reference each and every paragraph set forth above.

87.    On June 6, 2020, Mr. Waters and Vroom entered into a contract under the terms of which Vroom sold him the used 2017 Mazda CX-5.

88.    Under the terms of the contract, if a dispute arose between Mr. Waters and Vroom, then the dispute should be heard in arbitration, including by the American Arbitration Association (rather than a court proceeding).

89.    Each party to the arbitration agreement was required to "bear the administrator and arbitrator fees that each party [was] normally required to pay under the rules and law applicable to the proceeding."[14]

90.    Vroom failed to title and register the vehicle in Mr. Waters's name in California in a timely manner, and, as a result of its breach of contract, Mr. Waters initiated an arbitration proceeding with the AAA on March 18, 2022.

91.    In accordance with the arbitration provision and the AAA's *Consumer Arbitration Rules*, Mr. Waters paid a $200.00 filing fee.

92.    On May 18, 2022, the AAA invoiced Vroom for the Case Management Fee and the arbitrator compensation deposit. However, Vroom failed to submit payment for the arbitrator compensation deposit by the deadline for payment.

93.    On June 22, 2022, the AAA notified Mr. Waters and Vroom that Vroom had failed to pay the arbitrator compensation deposit by the required deadline.

94.    As a result of Vroom's failure to comply with the terms of the contract

---

[13] Tex. Civ. Prac. & Rem. Code § 38.001(b).
[14] Exhibit 1 at 2.

and pay the required fees, the AAA permitted Mr. Waters to withdraw his arbitration demand under Cal. Civ. Proc. Code § 1281.98, and the AAA administratively closed the case and declined to administer the arbitration on June 28, 2022.

95.     Through its failure to pay the arbitrator compensation deposit by the required deadline, Vroom materially breached and defaulted on its arbitration agreement under Cal. Civ. Proc. Code § 1281.98(a), and Vroom waived its right to compel arbitration.

96.     As such, Vroom is subject to sanctions under Cal. Civ. Proc. Code §§ 1281.98 and 1281.99 for the attorneys' fees and costs associated with the abandoned arbitration proceeding and the reasonable expenses, including the attorneys' fees and costs, incurred by Mr. Waters as a result of Vroom's breach of the arbitration provision.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

### (As to All Defendants)

97.     Mr. Waters realleges and incorporates herein by reference each and every paragraph set forth above.

98.     Under Texas law, an express warranty is created when a seller makes any promise to the buyer "which relates to the goods and becomes part of the basis of the bargain."[15]

99.     The express warranty that is created by such a promise is a warranty "that the goods shall conform to the . . . promise."[16]

100.    Vroom made a promise to Mr. Waters that it would title and register the vehicle in his name in California despite the fact that the vehicle was physically located in Columbus, Ohio, and that the titling and registration of the vehicle would be completed in a timely manner.

---

[15] Tex. Bus. & Com. Code § 2.313(a)(2).
[16] *Id.*

101.   Vroom breached this express warranty when it failed to title and register the vehicle in Mr. Waters's name in California in a timely manner.

102.   Mr. Waters gave Vroom reasonable notice that it had breached the express warranty when he repeatedly followed up with Vroom regarding its failure to title and register the vehicle in his name in a California in a timely manner.

103.   Nonetheless, Vroom failed to take any action to remedy this problem for more than two years, and this delay caused Mr. Waters substantial damage.

104.   As such, Mr. Waters is entitled to recover the difference between the value of the vehicle as warranted and its actual value, as well as incidental and consequential damages.[17]

## FIFTH CAUSE OF ACTION

### Breach of Warranty of Title

### (As to All Defendants)

105.   Mr. Waters realleges and incorporates herein by reference each and every paragraph set forth above.

106.   Under Texas law, a warranty of title arises in every contract for the sale of a good, including a vehicle.[18]

107.   Specifically, every contract for the sale of a good includes "a warranty by the seller that . . . the title conveyed shall be good, and its transfer rightful; and . . . the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge."[19]

108.   The warranty of title can only be excluded or modified by . . . specific language or circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have."[20]

---

[17] Tex. Bus. & Com. Code § 2.714.
[18] Tex. Bus. & Com. Code § 2.312(a).
[19] *Id.*
[20] Tex. Bus. & Com. Code § 2.312(b).

109.   Vroom gave Mr. Waters a warranty of title when it sold the vehicle to him and did not take any action to disclaim such warranty.

110.   Vroom breached the warranty of title when it sold Mr. Waters a vehicle that had issues with its title and failed to title and register the vehicle in his name in California in a timely manner due to these issues.

111.   Mr. Waters gave Vroom reasonable notice that it had breached the warranty of title when he repeatedly followed up with Vroom regarding its failure to title and register the vehicle in his name in California in a timely manner.

112.   Nonetheless, Vroom failed to take any action to remedy this problem for more than two years, and this delay caused Mr. Waters substantial damage.

113.   As such, Mr. Waters is entitled to recover the difference between the value of the vehicle as warranted and its actual value, as well as incidental and consequential damages.[21]

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

### (As to All Defendants)

114.   Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

115.   Under Texas law, the implied warranty of merchantability arises in a contract for the sale of goods, including a vehicle, "if the seller is a merchant with respect to goods of that kind."[22]

116.   Under the implied warranty of merchantability, the seller warrants that the goods being sold are merchantable, which means (in part) that the goods "[p]ass without objection in the trade under the contract description" and are "fit for the ordinary purposes for which such goods are used."[23]

---

[21] Tex. Bus. & Com. Code § 2.714.
[22] Tex. Bus. & Com. Code § 2.314(a).
[23] Tex. Bus. & Com. Code § 2.314(b)(1), (3).

22
COMPLAINT

117.   Vroom is in the business of selling vehicles, so it is a merchant for the purposes of the implied warranty of merchantability.

118.   Vroom could not disclaim the implied warranty of merchantability because it provided Mr. Waters with a written warranty for the vehicle.[24] As such, Vroom sold the vehicle to Mr. Waters with an implied warranty of merchantability.

119.   Being able to title, register, and receive a permanent license plate for a vehicle such that the vehicle can be lawfully driven in a timely manner is an ordinary purpose for which vehicles are used.

120.   The vehicle that Vroom sold Mr. Waters was not fit for this ordinary purpose because Vroom was unable to provide him the title and registration such that he could get a permanent license plate for the vehicle in a timely manner.

121.   Mr. Waters gave Vroom reasonable notice that it had breached the implied warranty of merchantability when he repeatedly followed up with Vroom regarding its failure to title and register the vehicle in his name in a timely manner.

122.   Nonetheless, Vroom failed to take any action to remedy this problem for more than two years, and this delay caused Mr. Waters substantial damage.

123.   As such, Mr. Waters is entitled to recover the difference between the value of the vehicle as warranted and its actual value, as well as incidental and consequential damages.[25]

## SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose

### (As to All Defendants)

124.   Mr. Waters realleges and incorporates herein by reference each and every paragraph set forth above.

125.   Under Texas law, the implied warranty of fitness for a particular purpose arises in a contract for the sale of goods, including a vehicle, "[w]here the

---

[24] 15 U.S.C. § 2308.
[25] Tex. Bus. & Com. Code § 2.714.

seller . . . has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."[26]

126.   Under the implied warranty of fitness for a particular purpose, the seller warrants that "the goods shall be fit for such purpose."[27]

127.   Vroom had reason to know that Mr. Waters was purchasing the vehicle so that he could drive it in a timely manner and have it titled and registered in California, and Mr. Waters purchased the vehicle in reliance on Vroom's skill and judgment in selecting the vehicle to sell to him.

128.   Vroom could not disclaim the implied warranty of fitness for a particular purpose because it provided Mr. Waters with a written warranty for the vehicle.[28] As such, Vroom sold the vehicle to Mr. Waters with an implied warranty of fitness for a particular purpose.

129.   Vroom breached the implied warranty of fitness for a particular purpose when Mr. Waters was unable to lawfully drive the vehicle as a result of Vroom's failure to provide him with a title and registration in California in a timely manner such that he could get a permanent license plate for the vehicle from the California Department of Motor Vehicles.

130.   Mr. Waters gave Vroom reasonable notice that it had breached the implied warranty of fitness for a particular purpose when he repeatedly followed up with Vroom regarding its failure to title and register the vehicle in his name in California in a timely manner.

131.   Nonetheless, Vroom failed to take any action to remedy this problem for more than two years, and this delay caused Mr. Waters substantial damage.

---

[26] Tex. Bus. & Com. Code § 2.315.
[27] *Id.*
[28] 15 U.S.C. § 2308.

132.    As such, Mr. Waters is entitled to recover the difference between the value of the vehicle as warranted and its actual value, as well as incidental and consequential damages.[29]

## EIGHTH CAUSE OF ACTION

### Violation of the Magnuson-Moss Warranty Act

### (As to All Defendants)

133.    Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

134.    Mr. Waters is a "consumer" within the meaning of the Magnuson-Moss Warranty Act ("Magnuson-Moss").[30]

135.    Vroom is a "supplier" and a "warrantor" within the meaning of Magnuson-Moss.[31]

136.    The vehicle that Vroom sold Mr. Waters is a "consumer product" within the meaning of Magnuson-Moss.[32]

137.    Vroom gave Mr. Waters a written warranty when it sold him the vehicle.

138.    Vroom also gave Mr. Waters a warranty of title when it sold him the vehicle, which is an "implied warranty" within the meaning of Magnuson-Moss,[33] as well as an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

139.    Vroom breached the written warranty and the implied warranties as discussed above and consequently violated Magnuson-Moss.[34]

---

[29] Tex. Bus. & Com. Code § 2.714.
[30] 15 U.S.C. § 2301(3).
[31] 15 U.S.C. § 2301(4)(5).
[32] 15 U.S.C. § 2301(1).
[33] *See, e.g.*, *Ammons v. Nissan*, No. 14-00-01286-CV, 2001 Tex. App. LEXIS 6174, at *9 (Sept. 6, 2001) (referring to the warranty of title as an implied warranty).
[34] 15. U.S.C. § 2310(d)(1).

140.   As such, Mr. Waters is entitled to recover his attorneys' fees, as well as any other damages that are recoverable.[35]

### NINTH CAUSE OF ACTION

**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**

**(As to All Defendants)**

141.   Plaintiff realleges and incorporates herein by reference each and every paragraph set forth above.

142.   Under Texas law, a dealer that is licensed by the Texas Department of Motor Vehicles "may not: (1) violate a board rule; (2) aid or abet a person who violates this chapter, Chapter 503, Transportation Code, or a rule adopted under those chapters; or (3) use false, deceptive, or misleading advertising relating to the sale or lease of motor vehicles.[36]

143.   Texas law authorizes a consumer to bring an action under the Deceptive Trade Practices–Consumer Protection Act ("DTPA") if the consumer "has sustained damages as a result of a violation of Sections 2301.351–2301.354 or Section 2301.357 [of the Texas Occupations Code]."[37]

144.   Importantly, the DTPA "shall be liberally construed and applied to promote [the Act's] underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."[38]

145.   The DTPA broadly outlaws "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."[39]

146.   The DTPA specifically outlaws certain "false, misleading, or deceptive acts or practices," including, but not limited to, "representing that goods or services

---

[35] 15 U.S.C. § 2310(d)(2).
[36] Tex. Occ. Code § 2301.351.
[37] Tex. Occ. Code § 2301.805.
[38] Tex. Bus. & Com. Code § 17.44.
[39] Tex. Bus. & Com. Code § 17.46(a).

have . . . characteristics . . . [or] benefits . . . which they do not have," "representing that goods or services are of a particular standard [or] quality . . . if they are of another," and "advertising goods or services with intent not to sell them as advertised."[40]

147.   The DTPA provides that "[a] consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) the use or employment by any person of a false, misleading, or deceptive act or practices that it: (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and (B) relied on by a consumer to the consumer's detriment; (2) breach of an express or implied warranty; [or] any unconscionable action or course of action by any person."[41]

148.   Vroom is a dealer that is licensed by the Texas Department of Motor Vehicles for the purposes of the Texas Occupations Code.

149.   Vroom used false, deceptive, and misleading advertising in relation to the sale of the vehicle to Mr. Waters insofar as it failed to disclose to him that it would be unable to provide him the title and registration for the vehicle as required by Texas law.

150.   Vroom falsely represented to Mr. Waters that the vehicle had characteristics or benefits that it did not have insofar as it failed to disclose to him that it would be unable to provide him the title and registration for the vehicle as required by Texas law.

151.   Vroom falsely represented to Mr. Waters that the vehicle was of a particular standard of quality when it was another insofar as it failed to disclose to him that it would be unable to provide him the title and registration for the vehicle as required by Texas law.

---

[40] Tex. Bus. & Com. Code § 17.46(b)(5), (7), (9).
[41] Tex. Bus. & Com. Code § 17.50(a).

152.   Vroom advertised the vehicle with the intent not to sell it as advertised insofar as it knew that it would be unable to provide the purchaser of the vehicle the title and registration as required by Texas law at the time that it was advertising the vehicle for sale. Vroom failed to disclose this fact to Mr. Waters.

153.   Vroom engaged in an unconscionable action or course of action by regularly selling cars to consumers while knowing that it would be unable to timely provide them with titles, including Mr. Waters. Vroom has long been aware that for many of the cars it sells, it will never be able to obtain a title for the consumer at all. It has further long been aware that it will be unable to provide the title in a "reasonable time" as required by Texas law.[42] A "reasonable time" is defined as within "20 working days of the date of sale of the vehicle for a vehicle registered in Texas."[43] For an out-of-state sale, Texas law requires that "within 20 working days of the date of sale" Vroom must "either file the application for certificate of title on behalf of the purchaser or deliver the properly assigned evidence of ownership to the purchaser."[44] Vroom has repeatedly and intentionally violated these Texas laws, including as to Mr. Waters. Vroom has engaged in this unconscionable course of action deliberately as part of an effort to increase its revenues and thus increase its stock price.

154.   Vroom intentionally engaged in these wrongful actions in the conduct of trade and commerce in Texas and intended to engage in these actions to profit from Mr. Waters and other consumers.

155.   The DTPA contains an anti-waiver clause which states that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void" unless certain mandatory requirements are met.[45] These requirements include, among other things, that "the consumer is represented

---

[42] Tex. Trans. Code § 501.0234(f).
[43] Tex. Admin. Code Title 43, Part 10, Chapter 215, Subchapter E, Rule 215.144.
[44] *Id.*
[45] Tex. Bus. & Com. Code § 17.42.

by legal counsel in seeking or acquiring the goods or services" and that certain specific statutory waiver language be included in substantially the same form as in the statute. Mr. Waters was not represented by legal counsel in the transaction with Vroom, and no language similar to the required statutory language was included in the contract. As such, any contractual efforts by Vroom to limit the rights of Mr. Waters under the DTPA are unenforceable and void.

156.   Vroom's wrongful actions in violation of the DTPA directly caused damage to Mr. Waters. Specifically, Mr. Waters was denied the use of the vehicle for more than a year and a half and was forced to incur other expenses related to the vehicle, including impound, storage, and legal fees.

157.   As such, Mr. Waters is entitled to recover economic damages, mental anguish damages, treble damages, attorneys' fees, and court costs.[46]

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Waters seeks the following relief against Defendants for its violations:

a.   Economic damages in an amount to be determined at a hearing for the losses that he suffered as a result of Vroom's actions;

b.   Mental anguish damages pursuant to the DTPA;

c.   Trebling of damages pursuant to the DTPA;

d.   Punitive damages calculated to be sufficient to deter the fraudulent, malicious, and grossly negligent conduct of Vroom in the future;

e.   His reasonable attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(b), Magnuson-Moss, the DTPA, and Cal. Civ. Proc. Code §§ 1281.98 and 1281.99;

f.   His costs and expenses associated with this arbitration; and

g.   Such other relief as the Court deems proper.

---

[46] Tex. Bus. & Com. Code § 17.50(b), (d).

## **DEMAND FOR JURY TRIAL**

Mr. Waters demands a trial by jury on all issues so triable.


DATED: August 12, 2022             Respectfully submitted,

                                   KNEUPPER & COVEY PC

                                   /s/ Kevin M. Kneupper /s/
                                   Kevin M. Kneupper, Esq.

                                   *Attorney for Plaintiff Martin Waters*
                                   E-mail: kevin@kneuppercovey.com

# EXHIBIT 1

Deal #123444, Stock #30051714

# vroom *retail purchase agreement*

| STATE | DATE |
|---|---|
| TX | 06/02/2020 |

## Purchaser Information

BUYER NAME | CO-BUYER NAME
**MARTIN JOSEPH WATERS** | N/A

BILLING ADDRESS
18235 PASEO VICTORIA, RANCHO SANTA FE, CA 92091

EMAIL | PHONE
mwaters@wsgr.com | (858) 401-9580

## Vehicle Being Purchased

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|
| 2017 | MAZDA | CX-5 | 21556 |

| BODY | COLOR | VIN # | STOCK # |
|---|---|---|---|
| | WHITE | JM3KFBBL9H0143106 | 30051714 |

LIENHOLDER NAME | LIENHOLDER ADDRESS
JP MORGAN CHASE BANK | PO BOX 901033, FORT WORTH, TX 76101-2033

Unless Buyer(s) ("you") receives a separate written 90-day limited warranty ("Limited Warranty") signed by Dealership ("Vroom", "Dealer", "we" or "us"), the above-referenced used vehicle ("Vehicle") is sold AS-IS and Vroom makes no express or implied warranties on the Vehicle, including the implied warranties of merchantability or fitness for a particular purpose, unless required by applicable law. Please see paragraph 1 of this Retail Purchase Agreement ("Agreement") for more details about Vroom's Limited Warranty and when it may apply. Except as set forth in this Agreement, Vroom does not owe any further services to you for the Vehicle. You acknowledge and agree that Vroom has not made any verbal or written promises regarding any services or features that will be performed or added to the Vehicle.

You and Vroom agree that this Agreement is governed by federal law and the law of the state of Vroom's licensed dealership address shown above. Subject to the terms of this Agreement, we agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above.

## Trade-In Vehicle #1

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| BODY | COLOR | VIN # | VALUE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

LIENHOLDER | LOAN PAYOFF
N/A | N/A

## Trade-In Vehicle #2

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| BODY | COLOR | VIN # | VALUE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

LIENHOLDER | LOAN PAYOFF
N/A | N/A

* Spanish translation: un honorario de documentación no es un honorario oficial. Un honorario de documentación no es requerido por la ley, pero puede ser cargada al comprador como gastos de manejo de documentos relacionados con una venta. Un honorario de documentación no puede exceder una cantidad razonable acordada por las partes. Esta notificación es requerida por la ley.

## Dealer Information

DEALERSHIP | PHONE
VROOM | (855) 524-1300

ADDRESS
12053 SOUTHWEST FWY (HWY 59), STAFFORD, TX 77477

## Purchase Details

| | |
|---|---|
| Selling Price | 19580.00 |
| Dealer's Inventory Tax | 33.01 |

The dealer's inventory tax charge is intended to reimburse the dealer for ad valorem taxes on its motor vehicle inventory. The charge, which is paid by the dealer to the county tax assessor-collector, is not a tax imposed on a consumer by the government, and is not required to be charged by the dealer to the consumer.

| | |
|---|---|
| State Sales Tax (TX) | 1517.45 |
| Other State Taxes | 0.00 |
| Dealer Documentary Fee | 150.00 |

A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.*

| | |
|---|---|
| Title Fee | 110.00 |
| License & Registration Fee | 261.00 |
| Inspection Fee | 25.50 |
| Other State Fees | 0.00 |
| Vehicle Service Contract | 0.00 |
| Gap Coverage | 0.00 |
| Tire & Wheel Coverage | 382.00 |
| Delivery | 599.00 |
| **Subtotal** | **22657.96** |
| (Selling Price + Protection + Extras + Taxes + Fees) | |
| Trade-In Value | 0.00 |
| Loan Payoff | 0.00 |
| Net Trade-In Balance | 0.00 |
| (Trade-In Value - Loan Payoff) | |
| Cash Down Payment | 6000.00 |
| (Includes any deposit credited) | |
| Total Down Payment | 6000.00 |
| (Cash Down Payment + Net Trade-In Balance) | |

## TOTAL BALANCE DUE | 16657.96

BUYER'S INITIALS   N/A

# vroom

**15. Arbitration and Class Action Waiver (PLEASE READ THIS CAREFULLY AS IT AFFECTS YOUR RIGHTS) (Continued)**

(f) The arbitration shall be administered by (i) JAMS, pursuant to its Comprehensive Arbitration Rules and Procedures (https://www.jamsadr.com/rules-comprehensive-arbitration/) and in accordance with its expedited procedures contained in those rules, or (ii) American Arbitration Association in accordance with its Consumer Arbitration Rules (https://www.adr.org/sites/default/files/Consumer%20Rules.pdf). If you initiate the arbitration, you may choose one of the above administrators. If Vroom initiates arbitration, we will give you 20 days to choose one of the above administrators. If you do not choose the administrator within that time frame, we will choose one. If the administrator a party chooses is unable or unwilling or ceases to serve as the administrator, then you or Vroom may choose the other administrator. If neither administrator is able or willing to serve as the administrator, the parties will mutually select an administrator, which must be a lawyer or retired judge with at least 15 years of legal experience.

(g) Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

(h) You and Vroom will bear the administrator and arbitrator fees that each party is normally required to pay under the rules and law applicable to the proceeding. Each party will bear the expense of its own attorneys, experts, and witnesses, except where applicable law and/or the Agreement allows a party to recover attorney's fees from the other party.

(i) The Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege. The arbitrator shall not apply federal or state rules of civil procedure or evidence. Either party may make a timely request for a brief written explanation of the basis for the arbitration award. Judgment on the arbitrator's award may be entered in any court with jurisdiction. The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. Either party can appeal the award to a three-arbitrator panel administered by the administrator. The costs of such appeal will be borne by the appealing party, unless applicable law or the administrator's rules provide otherwise.

(j) This arbitration provision survives termination of the Agreement, repayment of all amounts owed to Vroom, transfer of the Agreement, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. In the event of a conflict between this arbitration provision and the applicable arbitration rules or other provisions of the Agreement, or any other agreement between us, this arbitration provision will govern. However, in the event this arbitration provision conflicts with an arbitration provision in the RISC (where applicable), the provision in your RISC is controlling. If a court or arbitrator deems any part of this arbitration provision invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this arbitration provision shall be enforceable despite such invalidity; however, if the prohibition of class relief and proceedings in subsection (c) is found to be unenforceable or void in any proceeding, then this entire arbitration provision (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

(k) **Requirements for opting out: In order to reject this provision, Vroom must receive a signed writing ("Rejection Notice") from you within 30 days of the day you enter into the Agreement stating that you reject the arbitration provision.** The Rejection Notice must include your name, address, VIN of the Vehicle purchased, and date of the sale, and must be mailed to Vroom, Inc., Attn: General Counsel, 1375 Broadway, 11th Floor, New York, New York 10018 via certified mail, return receipt requested. Rejecting the arbitration provision will not affect any other aspect of the Agreement.

**By signing below, you agree that you have read this arbitration provision and agree to its terms. You understand that the arbitration provision may substantially limit your rights in the event of a dispute.**

**16. Assignment:** You may not assign your rights under this Agreement or any applicable RISC without Vroom's prior written consent.

**17. Electronic Records:** You agree that we may maintain documents and records relating to the Vehicle, the Agreement, and any related RISC electronically, including, without limitation, documents and record images, and that Vroom may dispose of original documents. You agree that an electronic copy of such documents and records may be used and shall be deemed to be the same as the original.

BUYER'S INITIALS  N/A

**18. Entire Agreement:** This Agreement, along with any RISC, contains the entire agreement between you and Vroom concerning the purchase of the Vehicle. Vroom, including its officers, employees, and agents, made no promises or representations concerning this Agreement or the Vehicle other than those contained in this Agreement. If any provision of this Agreement shall be deemed unlawful, void or unenforceable, then that provision shall be amended as possible to comply with applicable law and will not affect the validity and enforceability of any remaining provisions. To the extent there is a conflict between the terms of this Agreement and the terms of any applicable RISC, the RISC shall control. **This Agreement may not be amended or modified absent a writing signed by both parties.**

BUYER'S INITIALS MW N/A

# vroom

By executing this Agreement, you: (a) acknowledge reading the entire Agreement, including the arbitration provision; (b) agree to be bound by all of the Agreement's terms and conditions; (c) certify to being at least 18 years old; and (d) certify to receiving a fully completed copy of this Agreement. This Agreement is not binding until signed by an authorized representative of Vroom.

BUYER

CO-BUYER                                    N/A

ACCEPTED BY

Vroom