1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN WATERS,<br><br>                                    Plaintiff,<br><br>v.<br><br>VROOM INC.; and VROOM<br>AUTOMOTIVE, LLC,<br><br>                                    Defendants. | Case No.:  22-CV-1191 TWR (AGS)<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO COMPEL<br>ARBITRATION**<br><br>(ECF No. 7) |

Presently before the Court is a Motion to Compel Arbitration filed by Defendants Vroom Inc. and Vroom Automotive, LLC (collectively "Vroom" or "Defendants") (ECF No. 7, "Mot."), as well as Plaintiff Martin Waters' Response in Opposition (ECF No. 10, "Opp'n") and Defendants' Reply in Support of the Motion (ECF No. 12, "Reply"). The Court held a hearing on the Motion on December 1, 2022. (*See* ECF No. 14.) Having carefully considered the Parties' arguments and the relevant law, the Court **DENIES** Defendants' Motion to Compel Arbitration.

## BACKGROUND

Plaintiff entered into a written contract with Defendants for the purchase of a used vehicle in June 2020. (Mot. at 5; ECF No. 1 ("Compl.") ¶ 22.) The contract contains an arbitration agreement in which the Parties agreed to "resolve any and all disputes and

claims [related to the vehicle or purchase agreement] through binding arbitration."  (ECF No. 7-3 ("Ex. A") at 5 (boldface omitted).)  The Parties also agreed that the Federal Arbitration Act would govern the agreement and any arbitration would be administered either by JAMS pursuant to its Comprehensive Arbitration Rules or the American Arbitration Association ("AAA") pursuant to its Consumer Arbitration Rules.  (*Id.* at 6.)  If Plaintiff initiated the arbitration, he could choose between the above arbitration administrators and accompanying rules.  (*Id.*)

According to Plaintiff, after entering the agreement and purchasing the vehicle, Plaintiff experienced problems and delays getting the vehicle titled and registered and sought assistance from Vroom.  (Compl. ¶¶ 22–61.)  After various attempts at resolving the issues, and expending unforeseen expenses to fix the problem, Plaintiff filed an arbitration demand with AAA in March 2022.  (*Id.* ¶¶ 32–63.)  AAA then notified Vroom that its initial case fee was due by May 6, 2022, at the latest, and that if Vroom did not pay the filing fee, AAA would administratively close the case.  (Mot. at 6; ECF No. 7-5 ("Ex. C") at 2.)  AAA also notified Vroom that if AAA declined to administer the arbitration, either Party could choose to submit the dispute to court for resolution in accordance with Rule 1(d) of the Consumer Arbitration Rules.  (Ex. C at 2.)  After this reminder from AAA, Vroom paid the initial case fee.  (Mot. at 6; ECF No. 7-6 ("Ex. D") at 2.)

Then on May 18, 2022, AAA sent a letter to the Parties stating that an arbitrator had been appointed and that the $1,400 case management fee and the $2,500 arbitrator compensation deposit was due from Vroom.  (ECF No. 7-7 ("Ex. E") at 3.)  AAA explained that (1) payment was due upon receipt of the letter, (2) the arbitration was subject to California Code of Civil Procedure sections 1281.97 and 1281.98, (3) payment from Vroom must be received by June 17, 2022, and (4) if the payment was not received by June 17, AAA "may close the parties' case per the Consumer Rules."  (*Id.*)  AAA also noted that pursuant to the California Code of Civil Procedure, AAA could not grant any extensions of this payment deadline unless all the Parties agreed.  (*Id.*)  Finally, AAA stated that if Vroom did not pay the required fees by June 17, AAA would seek direction from

Plaintiff regarding his options and that "[a]ccording to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer [the] arbitration, either party [could] choose to submit its dispute to the appropriate court for resolution." (*Id.*)

By June 6, 2022, AAA had not received the necessary payment from Vroom, so AAA sent a reminder letter to the Parties stating that Vroom's fees must be *received* by June 17 and that it would not grant any extensions for this payment unless all Parties agreed. (ECF No. 10-2 at 6.) At 7 a.m. on June 17, 2022, Vroom attempted to pay the full amount owed, but there was an error with AAA's payment platform such that AAA only accepted the $1,400 case management fee, but not the $2,500 arbitrator compensation fee. (Mot. at 6.) AAA's platform flagged the $2,500 as a duplicate transaction. (*Id*.) Vroom suspects this is because they had recently made multiple payments to AAA for other similar matters filed by the same law firm that represents Plaintiff in this case. (*Id*. at 6 n.1.) Vroom emailed the AAA case administrator asking how to fix the problem. (*Id*. at 6; ECF No. 7-8 ("Ex. F") at 2.) AAA responded later that evening and directed Vroom to call customer service. (Ex. F at 2.)

The problem did not get solved that day and on June 22, 2022, AAA sent a letter to the Parties stating AAA had not received the arbitrator compensation fee requested and asking Plaintiff how he wanted to proceed pursuant to California Code of Civil Procedure section 1281.98. (ECF No. 7-9 ("Ex. G") at 2.) On June 23, 2022, Plaintiff responded that because the payment was not made within the deadline and he would not agree to an extension of the payment deadline, AAA should close the arbitration. (ECF No. 7-10 ("Ex. H") at 2–3.) That same day, the error in AAA's payment system was corrected and AAA received Vroom's arbitrator compensation fee. (Mot. at 7; Ex. D at 2.) As a result, on June 28, AAA notified the Parties that (1) AAA did not receive the payment within the deadline, (2) Plaintiff advised that he wished to withdraw from arbitration as opposed to agree to an extension of the payment deadline, and (3) AAA "administratively closed [the] case due to non-payment by [Vroom]." (ECF No. 10-2 at 9.) AAA specifically noted that according to Rule 1(d) of the Consumer Arbitration Rules, because AAA declined to administer the

arbitration, either Party could submit the dispute to the appropriate court for resolution. (*Id.*)  Vroom asked the AAA case administrator to reopen the case, but he declined to do so stating, "absent party agreement to reopen, this case will remain closed" and that AAA would "abide by any court orders received that relate to this arbitration."  (ECF No. 7-11 ("Ex. I") at 2–6.)

Plaintiff subsequently initiated this case against Defendants asserting nine causes of action relating to Plaintiff's purchase of the used vehicle: (1) fraudulent inducement, (2) breach of contract (retail purchase agreement), (3) breach of contract (arbitration agreement), (4) breach of express warranty, (5) breach of warranty of title, (6) breach of implied warranty of merchantability, (7) breach of implied warranty of fitness for a particular purpose, (8) violation of the Magnuson-Moss Warranty Act, and (9) violation of the Texas Deceptive Trade Practices Consumer Protection Act.  (*See generally* Compl.)  Defendant moves to compel arbitration arguing that under the Federal Arbitration Act ("FAA"), which governs this case, the Court must enforce the arbitration agreement and either stay or dismiss this action.  (Mot. at 7–8, 12.)  Plaintiff opposes Defendants' request arguing that under the FAA, the Court should not send this case back to arbitration because the arbitration has already been had, Defendant defaulted in the arbitration proceedings, and Plaintiff did not fail, neglect, or refuse to arbitrate.  (Opp'n at 10–17.)

## LEGAL STANDARD

The FAA, *see* 9 U.S.C. §§ 1–16, governs the enforceability of arbitration agreements in contracts.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991).  If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement to arbitrate the dispute.  *See* 9 U.S.C. § 4.  The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *see Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts,

but established a federal policy in favor of arbitration."). But the FAA "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 474 (1989). Instead, the Court can grant the requesting relief only if it has authority to act as outlined in the FAA. *See In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011).

In determining whether to compel a party to arbitrate, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted). If the Court finds that the answers to those questions are yes, the court usually must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, the requirements of the two sections of the FAA that act as parallel devices for enforcing an arbitration agreement must also be met. *See* 9 U.S.C §§ 3–4; *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003). "A party desiring arbitration of a dispute first brought in a district court can seek a stay of the court proceedings under § 3, and a concurrent order under § 4 compelling arbitration." *Id*. Under § 3, a court should stay an arbitrable case "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 4 provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Court is not required to order arbitration upon a § 4 motion brought by a defaulting party. *See Sink*, 352 F.3d at 1201.

## ANALYSIS

Defendants move to compel arbitration in this case based on the arbitration agreement the Parties signed relating to Plaintiff's purchase of a used vehicle from Defendants. (Mot. at 5.) The Parties do not dispute that a valid arbitration agreement exists that encompasses the issues in dispute in this case. (Mot. at 8–10; Opp'n at 5, 12–13.)

Instead, the issues the Court must decide are (1) whether the arbitration "has been had" and Defendants defaulted such that the Court is not required to return the Parties to arbitration and (2) if not, whether Plaintiff has failed, neglected, or refused to arbitrate.  For the reasons outlined below, the Court finds that Plaintiff should not be forced back to arbitration.

Arbitration is a creature of contract law and, as such, the Court looks to the Parties' agreement to determine how the Parties agreed to proceed with arbitration.  *See Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *3 (N.D. Cal. Sept. 3, 2020).  Here, the Parties agreed that any dispute would be resolved by binding arbitration in accordance with either JAMS' Comprehensive Arbitration Rules or AAA's Consumer Arbitration Rules, whichever one Plaintiff chose.  (Ex. A at 6.)  When the dispute arose, Plaintiff opted to arbitrate through AAA in accordance with AAA's Consumer Arbitration Rules.  (ECF No. 7-4 at 2–3, 31; ECF 10-2 at 2.)  The applicable AAA Consumer Arbitration Rules provide the arbitrator or arbitration administrator two relevant powers: (1) Rule 55 states that "AAA in its sole discretion may . . . stop the administration of an ongoing arbitration due to a party's improper conduct," and (2) Rule 1(d) states that if AAA declines "to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution."  *Consumer Arbitration Rules*, American Arbitration Association 1, 10, 32 (2020), https://adr.org/sites/default/files/Consumer_Rules_Web_2.pdf ("Consumer Arbitration Rules").[1]

The Parties had the right under the FAA to choose the rules under which their arbitration would be conducted.  *See Tillman v. Tillman*, 825 F.3d 1069, 1076 (9th Cir. 2016).  The rules they chose allow the arbitrator or arbitration administrator, in his or her discretion, to stop the administration of the arbitration and to then allow the Parties to

---

[1]     The Parties do not specify which version of the Consumer Arbitration Rules apply, but the 2016 and 2018 versions of the Consumer Arbitration Rules include the same rules with the exact same language. *See Consumer Arbitration Rules*, American Arbitration Association 1, 10, 32 (2016), https://www.adr.org/sites/default/files/Consumer%20Rules.pdf; *Consumer Arbitration Rules*, American Arbitration Association 1, 10, 32 (2018), https://adr.org/sites/default/files/Consumer_Rules_Web_0.pdf.

proceed in court.  *See* Consumer Arbitration Rules 1(b), (d), & 55.  That is exactly what happened in this case and, as a result, the arbitration has been had in accordance with the rules agreed to by the Parties.  *See Greco*, 2020 WL 5628966, at *3 (where parties' arbitration was terminated for non-payment of fees, the arbitration had "been had" under § 3 of the FAA); *Tillman*, 825 F.3d at 1073–74.  Because Defendants expressly agreed to be bound by the AAA Consumer Arbitration Rules, they cannot now complain of their enforcement.  *See Greco*, 2020 WL 5628966, at *3.  In other words, the arbitration has already been had and Defendants defaulted in the arbitration proceedings since they did not pay according to the clear deadline for *receipt* of payment.  (*See* ECF 10-2 at 6.) Because Defendants defaulted and already had their opportunity to arbitrate, the Court is not required to stay the proceedings under § 3 of the FAA or compel arbitration under § 4 of the FAA.  *See Tillman*, 825 F.3d at 1074; *Sink*, 352 F.3d at 1201 (finding that § 4 of the FAA does not compel a district court to return the parties to arbitration where defendant had a fair chance to proceed with arbitration, but it "scuttled that prospect by its non-payment of costs, impeding the arbitration to the point where the arbitrator cancelled the arbitration"); *id.* ("[A] party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3.").  "Under well-settled caselaw and the AAA's own rules, the termination of the arbitration due to [Defendants'] non-payment of fees means that Plaintiff can pursue his claims in court." *Eliasieh v. Legally Mine, LLC*, No. 18-cv-03622-JSC, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020).

Defendants argue that the cases finding a party in default in an arbitration proceeding for non-payment of fees are distinguishable because those cases involve parties that either could not pay the arbitration fees or parties that missed the initial payment due to their own clerical error.  (Mot. at 11–12; Reply at 3, 5–6.)  Instead, Defendants highlight that it was AAA's clerical error, not their own, that resulted in AAA not receiving Defendants' attempted payment by the deadline.  (Mot. at 11–12; Reply at 3.)  And for the first time in

their reply brief, Defendants contend that it would be against public policy for the Court to allow the case to proceed under these circumstances.[2]  (Reply at 7.)  At the hearing on the Motion, Defendants conceded that what they are asking for is essentially equitable relief from the Court.  (Dec. 1 Tr. at 3, 6, 18.)  This request—they admit—has no grounding in caselaw or other authority, except for the general proposition that the FAA favors arbitration.  (*Id.* at 3, 5, 18.)

The Court recognizes that there is "no totally satisfactory solution" to a party's non-payment or late payment of its share of arbitration fees.  *Tillman*, 825 F.3d at 1076.  But by "incorporating rules that allow the AAA to decline arbitration and for the parties to submit their claims to a court afterwards, the [P]arties agreed to not require arbitration in these circumstances."  *Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2021 WL 134578, at *2 (N.D. Cal. Jan. 14, 2021) ("Where the rules selected by the parties allow the AAA to decline arbitration, and for the parties to then proceed with litigation, the AAA may decline arbitration and the parties may proceed with litigation.").  And enforcing the Parties' agreement is not against public policy.[3]  AAA warned Defendants numerous times that, in general, if payments were not timely received, AAA may administratively close the case.  (Ex. C at 2; Ex. E at 3; ECF No. 10-2 at 3.)  And that according to Rule 1(d) of the Consumer Arbitration Rules, if AAA did so, either party could submit the dispute to the appropriate court.  (Ex. C at 2; Ex. E at 3.)  Defendants must accept the risk they took by

---

[2]    Arguments raised for the first time in a reply brief are generally considered waived.  *See Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007).  But courts have discretion to consider those arguments if they give the adverse party a chance to respond.  *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040–41 (9th Cir. 2003).  The Court gave Plaintiff a chance to respond to this argument at the hearing on this Motion.  (*See* Dec. 1 Tr. at 12.)  And, in any event, Defendants' argument is not persuasive.

[3]    Part of Defendants' public policy argument addresses the appropriate resolution of a case when a party intentionally decides not to pay arbitration fees in order to bring its dispute to a court and avoid arbitration.  (Reply at 7.)  But that is not the case here.  There is no suggestion in any of the Motion papers that Defendants intentionally refused to pay the arbitration fees.  Defendants' entire Motion is premised on the argument that the missed deadline was a mistake on AAA's part.  So any public policy concerns about parties intentionally refusing to pay arbitration fees is inapplicable to this case.

22-CV-1191 TWR (AGS)

waiting until the last day to try to pay their fees.[4]  That Defendants do not think "the outcome fair because arbitration was terminated . . . based on innocent error is of no import—[Defendants] agreed to the rules that allow that outcome."  *Greco*, 2020 WL 5628966, at *4.

The Court could stop here and need not delve into a discussion about whether Plaintiff failed, neglected, or refused to arbitrate.  But even if the Court had to decide that question, Plaintiff has not failed, neglected, or refused to arbitrate.  Defendants argue the arbitration was wrongfully terminated by Plaintiff because Plaintiff decided to withdraw the matter from arbitration.  (Reply at 5.)  But Defendants fail to discuss two key considerations: (1) Plaintiff is the one that sought arbitration of this dispute under rules specifically outlined in the Parties' arbitration agreement, (*see* ECF No. 7-4 at 2–3), and (2) the AAA case administrator gave Plaintiff the option to withdraw because AAA did not receive Defendants' payment in a timely manner as required, (*see* Ex. G at 2; ECF 10-2 at 9).  AAA warned Defendant that it would give Plaintiff options on how to proceed if it did not timely receive Defendants' payment.  (Ex. E at 3.)  And one of those options would be for AAA to close the case.  (*Id.*)  Defendants point to no authority finding that, in circumstances like these, Plaintiff is considered to have failed, neglected, or refused to arbitrate.[5]  That AAA would reopen the case if ordered to do so by the Court, (Reply at 5),

---

[4]  A contrary holding, penalizing Plaintiff for Defendants' decision to wait until the last day to pay the required arbitration fees knowing AAA would not extend the deadline, would be inequitable. Defendants could have attempted to pay the arbitration fees through a different medium when AAA's typical payment platform did not accept Defendants' attempted payment.  (Ex. D at 3.)  But there is no evidence that they made such an effort.

[5]  Defendants also argue that Plaintiff wrongfully withdrew this matter from arbitration because Plaintiff relied on California procedural rules to do so, even though Texas law applies to this case.  (Reply at 5.)  But Defendants' argument is misguided for a few reasons.  First, while the purchase agreement between the Parties elects Texas law as the substantive law to be applied in any dispute, a "general choice of law clause, without more, does not show that the parties intended to incorporate state procedural rules on arbitration."  *BioMagic, Inc. v. Dutch Bros. Enters., LLC*, 729 F. Supp. 2d 1140, 1146 (C.D. Cal. 2010); *see Preston v. Ferrer*, 552 U.S. 346, 361–63 (2008).  Second, the AAA case administrator is the one who originally relied on California procedural rules.  Third, that the AAA case administrator relied on

is immaterial—the AAA rules allow Plaintiff to file with this Court and continue litigation in this Court.  *See Adame v. Ally Fin., Inc.*, No. 2:17-cv-01654-SVW-KS, 2017 WL 8218291, at *2 (C.D. Cal. Aug. 23, 2017).

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendants' Motion to Compel Arbitration and **ORDERS** Defendants to file a response to Plaintiff's Complaint <u>within twenty-one (21) days</u> of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  January 13, 2023

_____

Honorable Todd W. Robinson
United States District Judge

---

California procedural rules to set deadlines for arbitration payments and to give Plaintiff options on how to proceed in the event of untimely payment says nothing about Plaintiff's role in ending the arbitration. Finally, even if AAA should not have set payment deadlines according to California procedural rules (which Defendants concede is not an issue before this Court (*see* Dec. 1 Tr. at 3)), AAA's ability to close an arbitration in its sole discretion and allow either party to proceed to court under the Consumer Arbitration Rules the Parties agreed to is dispositive in this case.  *See Greco*, 2020 WL 5628966, at *4 ("The AAA is in a far better position to know its own rules and to exercise discretion according to those rules."). The AAA Consumer Arbitration Rules allow for Plaintiff to continue with litigation here.